UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>ACHARAYYA RUPAK,<br><br>  Defendant. | Case No. 16-cr-01333-BAS-1<br><br>**ORDER DENYING MOTIONS TO REDUCE SENTENCE**<br>**(ECF Nos. 126, 132)** |

On August 6, 2017, this Court sentenced Mr. Rupak to twenty-four months in custody. (ECF No. 61.) Now, after serving seventeen months, Mr. Rupak moves to reduce his sentence under Title 18, United States Code, Section 3582(c)(1)(A)(i). (ECF Nos. 126, 132.) He also filed a supplemental motion. (ECF No. 132.) The Government opposes (ECF No. 134), and Mr. Rupak replies (ECF No. 135). For the reasons stated below, the Court **DENIES** the Motions.

**I.    BACKGROUND**

Mr. Rupak opened a medical tourism company that offered international organ transplant and surrogacy services. He took money from couples seeking surrogate parents or organ donors and then failed to deliver the money to the service providers. He explained delays by misrepresenting—sometimes by impersonating a clinic doctor—that miscarriages had occurred with the surrogate or that the clinics had failed to deliver healthy

organs when in fact the procedures had never occurred. (*See* PSR ¶¶ 3–68, ECF No. 45.) Several of the victims made statements as to the devastating effect of Mr. Rupak's fraud. (*Id.* ¶¶ 40–67, 74–83.)

Mr. Rupak pled guilty to interstate or foreign travel in aid of racketeering enterprise. (ECF Nos. 38, 40.) As part of his plea agreement, Mr. Rupak waived his right to appeal or collaterally attack "every aspect of the conviction and sentence, including any restitution order up to $750,000" unless: (1) the Court sentenced him to more than the high end of the guideline range calculated by the Government; or (2) he was collaterally attacking his conviction based on ineffective assistance of counsel. (Plea Agreement § XI, ECF No. 40.) Mr. Rupak has not alleged that either of these factors applies.

The Court sentenced Mr. Rupak to 24 months in custody and ordered him to pay restitution of $319,675.00. (ECF Nos. 61, 89.) On October 10, 2017, Mr. Rupak moved to withdraw his guilty plea and vacate his sentence claiming the Government had breached the plea agreement. (ECF No. 69.) The Court denied these motions and denied Mr. Rupak's motion for bond pending appeal. (ECF No. 85.) The Court ordered Mr. Rupak to self-surrender by November 8, 2017. (*Id.*)

On November 8, 2017, the Court of Appeals stayed Mr. Rupak's self-surrender pending appeal of his motion to withdraw his guilty plea. (ECF No. 94.) On July 2, 2019, the Court of Appeals affirmed Mr. Rupak's judgment and sentence. (ECF No. 107.) On April 21, 2020, the Supreme Court denied Mr. Rupak's petition for writ of certiorari. In light of these orders, this Court ordered Mr. Rupak to self-surrender by July 22, 2020. (ECF No. 108.) Mr. Rupak requested that this self-surrender date be extended because of the risks he faced from COVID-19. (ECF No. 109.) The Court denied his motion. (ECF No. 114.) Mr. Rupak appealed the order denying his request to extend his self-surrender date (ECF No. 115), which was denied by the Court of Appeals (ECF No. 118). On July 22, 2020, Mr. Rupak self-surrendered. (ECF No. 119.) He has, therefore, served approximately seventeen months of his original twenty-four month sentence.

Mr. Rupak now files a Motion to Reduce his Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 126.) The Government opposes (ECF No. 134), and Defendant replies (ECF No. 135). Defendant, who is 54 years old, claims that his medical conditions including type-2 diabetes, high blood pressure, hyperlipidemia, coronary heart disease, obesity, boggy prostate, chronic urinary tract infections, shoulder injury, bleeding hemorrhoids and chronic ringworm militate in favor of compassionate release. The medical records submitted by Mr. Rupak confirm that he has struggled to control his diabetes, blood pressure and weight while in custody. (ECF No. 126, Exh. B.) This trend began before he was incarcerated, as his pre-incarceration medical records reflect that his diabetes was "uncontrolled" in part because Mr. Rupak admitted he had not been taking his medications or checking his blood sugars at home. (ECF No. 126, Exh. A.) While in custody, Mr. Rupak has been prescribed medications for his conditions, and they have been monitored frequently. (Exh. 126, Exh. B.) In January 2021, Mr. Rupak was offered, but declined, insulin for his diabetes. (*Id.*, pg. 141.)

In addition, on October 22, 2020, Defendant contracted COVID-19 while in custody. (ECF No. 126, Exh. B, pg. 88.) The medical records reflect that he had some wheezing and shortness of breath but recovered quickly. (*Id.*) After recovery, he was vaccinated for COVID-19. (Exh. B, pg. 169.) Defendant claims he has been exhibiting "long hauler" symptoms including brain fog, severe joint and muscle pain, anxiety, loss of sight in one eye, diminished hearing, fatigue, dizziness, dry mouth and poor sleep.[1]

Finally, Defendant argues his wife is disabled and needs her husband's care.

Defendant submits evidence that he submitted a request for compassionate release from the facility where he is being housed on July 23, 2021 "based on the incapacitation of [his] spouse," which was denied on August 9, 2021. (ECF No. 126, Exh. J.) He then filed a second request on August 27, 2021 "due to the mental and physical consequences of contracting COVID-19, lack of medical follow-up care for post-COVID effects, and the

---

[1] Although Defendant attaches medical records from the Bureau of Prisons ("BOP") to his Motion, the Court was unable to find any medical records supporting his claims of "long hauler" diagnosis.

debilitating illness of [his] wife and her vulnerabilities." (*Id.*) This was also denied on September 9, 2021. (*Id.*) Defendant provides no evidence he appealed either of these denials.

## II.   ANALYSIS

### A.   Failure to Exhaust Administrative Remedies

Under 18 U.S.C. § 3582(c)(1)(A), a court may, in certain circumstances, grant a defendant's motion to modify his or her term of imprisonment. Before filing such a motion, the defendant must first petition the BOP for compassionate release. 18 U.S.C. § 3582(c)(1)(A). A court may grant the defendant's motion for a modification in sentence only if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or after 30 days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

This "administrative exhaustion requirement is mandatory and must be enforced when properly raised by the government." *United States v. Keller*, 2 F.4th 1278, 1280–81 (9th Cir. 2021) ("[A] court may not consider a motion brought under § 3582(c)(1)(A) unless . . . the inmate has requested the BOP make such a motion."). "The requirement promotes good policy." *Id.* at 1280. It "'ensures that prison administrators can prioritize the most urgent claims.'" *Id.* (quoting *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020)).

In this case, Mr. Rupak has failed to exhaust his administrative remedies. Although he filed a request with the facility where he is being housed, he did not appeal the denial of his request. However, since the Government failed to raise this issue in its brief, the Court proceeds to analyze his substantive request. *See Keller*, 2 F.4th at 1282 (requiring exhaustion of administrative remedies is a mandatory claim-processing rule and may be forfeited if not raised by the opposing party).

**B.     Extraordinary and Compelling Reasons**

If the exhaustion requirement is met, a court may modify or reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).  As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. 2020).

Unfortunately, Congress provided no statutory definition of "extraordinary and compelling reasons" and instead delegated that responsibility to the U.S. Sentencing Commission.  *See United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021).  Due to vacancies in the Sentencing Commission, the Commission has been unable to update its definition of "extraordinary and compelling reasons" following passage of the First Step Act that amended § 3582(c)(1)(A).  *Id.*  Nonetheless, the Sentencing Commission's original policy statements, although not binding, may inform the district court's decision as to whether certain conditions are extraordinary and compelling.  *Id.*

In the Application Notes, the Sentencing Commission gives examples of extraordinary and compelling reasons including that the Defendant is:

(I)     suffering from a serious physical or medical condition;

(II)    suffering from a serious functional or cognitive impairment; or

(III)   experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13(1)(A)(ii), Application Note 1(A)(ii) (last revised May 10, 2021).

Merely the fact that a defendant is in poor physical health or has chronic health conditions may be insufficient to show extraordinary and compelling reasons for release. *See, e.g.*, *United States v. Saccoccia*, 10 F.4th 1, 5 (1st Cir. 2021); *United States v. DeMille*,

465 F. Supp. 3d 1144, 1149 (D. Or. 2020). Courts have routinely denied the motion absent truly exceptional circumstances. *See United States v. Davis*, No. 3:20-cr-00032-IM-1, 2021 WL 1030152, at *3 (D. Or. Mar. 17, 2021).

      Mr. Rupak's argument for compassionate release falls into four categories. First, he argues that his medical conditions make him more vulnerable to future outbreaks of COVID-19, including the new Omicron variant. The Court finds his circumstances are insufficient to meet his burden. First, he has been vaccinated. The Court agrees with the Seventh Circuit that "for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 802 (7th Cir. 2021); s*ee also United States v. Del Rosario Martinez*, 524 F. Supp. 3d 1062, 1064 (S.D. Cal. 2021) ("Defendant's 'vaccination significantly mitigates the risk that he will contract COVID-19' much less become seriously ill." (quoting *United States v. Grummer*, No. 08-cr-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021))). The Omicron variant does not change this calculus. *See* CDC, *Omicron Variant: What You Need to Know*, https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html (last visited Jan. 5, 2022) ("Current vaccines are expected to protect against severe illness, hospitalizations, and deaths due to infection with the Omicron variant.").

      In addition, Mr. Rupak has already had COVID-19. The CDC has concluded that "[c]ases of [coronavirus] reinfection have been reported but remain rare." CDC, *Reinfection with COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited Jan. 5, 2022); *see also* Apporva Mandavilli, *Coronavirus Reinfections Are Real But Very, Very Rare*, N.Y. Times (Oct. 13, 2020), https://www.nytimes.com/2020/10/13/health/coronavirus-reinfection.html. "Eight months after infection, most people who have recovered still have enough immune cells to fend off the virus and prevent illness." Apporva Mandavilli, *Immunity to the Coronavirus May Last Years, New Data Hints*, N.Y. Times (Nov. 17, 2020), https://www.nytimes.com/2020/11/17/health/coronavirus-immunity.html; *see also* Dan et

al., *Immunological Memory to SARS-CoV-2 Assessed for up to Eight Months After Infection*, Science (Jan. 6, 2021), https://www.science.org/doi/10.1126/science.abf4063; *see also* Chris Jennewein, *San Diego Researchers Find COVID Survivors Have Long-Lasting Immunity to Re-infection*, Times of San Diego (Jan. 10, 2021), https://timesofsandiego.com/health/2021/01/10/san-diego-researchers-find-covid-survivors-have-long-term-immunity-to-re-infection/. Not only are the cases rare, but infections the second time around are mostly mild. *See* Jonathan Wosen, *Yes, You Can Get COVID Twice, Don't Be Alarmed, San Diego Scientists Say*, San Diego Union-Tribune, (Nov. 29, 2020), https://www.sandiegouniontribune.com/business/biotech/story/2020-11-29/yes-you-can-get-covid-19-twice-dont-be-alarmed-san-diego-scientists-say. These results are significant, especially when coupled with the growing scientific research that vaccinations are largely successful at warding off serious disease from the coronavirus.

These facts lead the Court to conclude, at least for now, that Mr. Rupak's risks for re-contracting COVID-19 leading to a severe infection are low, and thus he has not shown extraordinary and compelling reasons for release based on the risk from COVID-19.

Second, Mr. Rupak argues that his medical conditions are being inadequately treated in custody. Having reviewed the BOP medical records submitted by Mr. Rupak, the Court disagrees. Mr. Rupak's conditions are being adequately monitored and treated. The unfortunate reality is that he struggled with medical conditions before he was incarcerated, and these concerns were taken into consideration at the time he was sentenced. To the extent Mr. Rupak argues that inadequate medical care constitutes extraordinary and compelling reasons, the Court finds he has failed to establish inadequate care to support this argument.

Third, Mr. Rupak argues generally that his medical conditions are so extreme that they warrant release. Although not binding, the Application Note to § 1B1.13 provides some guidance. Mr. Rupak is suffering from serious physical and medical conditions, but he is still able to provide self-care within the environment of the correctional facility. Although he is obese and suffers from diabetes, the sad reality is that about half the U.S.

population is obese. *See United States v. Aguilar*, No. 18-cr-00275-LHK, 2020 WL 6081779, at *5 (N.D. Cal. Oct. 5, 2020) ("As of 2017-2018, 42.4% of American adults are obese." (citing Craig M Hales et al., *Prevalence of Obesity and Severe Obesity Among Adults, United States, 2017-2018*, CDC (Feb. 2020), https://www.cdc.gov/nchs/products/databriefs/db360.htm)). Even more starkly, "[i]n 2015, the Bureau of Justice Statistics reported that in 2011-2012, 74% of prisoners and 62% of jail inmates were overweight, obese or morbidly obese." *Id.* (citing U.S. Dept. of Justice, *Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12* (Oct. 4, 2016), https://www.bjs.ogv/content/pub/pdf/mpsfpji112.pdf).

Assuming this is still the case in 2022, if being overweight qualified as an extraordinary and compelling reason for a sentence reduction, the vast majority of prisoners would currently be eligible for release. And unfortunately, obesity and diabetes, along with high blood pressure, often go hand in hand. The BOP has offered Mr. Rupak insulin for his diabetes, which he has chosen to decline. The Court finds his medical conditions, although concerning, do not rise to the level of extraordinary or compelling reasons for release.

Finally, Mr. Rupak argues that he needs to be released to care for his wife. This issue was raised at the time of Mr. Rupak's sentencing, and the Court took his concerns into consideration when fashioning an appropriate sentence for Mr. Rupak. However, as the Court decided at the time of sentencing, the § 3553 factors discussed below outweigh the concerns expressed about Mr. Rupak's wife.

### C. § 3553(a) Factors

Considering the factors set out in 18 U.S.C. §3553(a), Mr. Rupak is not entitled to release. His crime was a serious one, with real victims whose lives were severely impacted by his fraud. The nature and circumstances of the offense, just punishment, and protecting the public, all weigh in favor of Mr. Rupak completing the 24-month sentence he was given. Therefore, the Court finds the § 3553 factors also militate against granting the Motions to Reduce Sentence.

### III. CONCLUSION

For the reasons stated above, the Court **DENIES** Mr. Rupak's Motions to Reduce his Sentence. (ECF Nos. 126, 132.)

**IT IS SO ORDERED.**

DATED: January 5, 2022

Hon. Cynthia Bashant
United States District Judge